FILED
2014 Dec-01  PM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## HUNTSVILLE DIVISION

**BEN FERRIS ex rel. UNITED STATES OF AMERICA**

                    Plaintiff,

    v.                                          Case No.: 5:13-cv-01041-CLS

**AFOGNAK NATIVE CORPORATION and ALUTIIQ, LLC**

                    Defendants.

# RESPONSE IN OPPOSITION
## <u>TO DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I. Introduction ……………………………………………………………………………..1

II. Standard of Law…………………………………………………………………………2

III. Argument………………………………………………………………………………2

    A. Defendants' use of a fraudulent operational structure to exploit the 8(a) system violates the False Claims Act. ........................................................................................3

    B. Each of Relator's specific claims as to Defendants' misrepresentations to the government regarding their contract performance is plausible. ..........................................8

        1. Defendants' businesses did not comply with the 8(a) program requirements and their certifications as to their compliance were fraudulent. ..........................................9

        2. Defendants' 8(a) entities are separate legal entities on paper only. ........................9

        3. The Amended Complaint alleges that Defendants' 8(a) entities failed to meet the percentage of work requirements under their government contracts. ........................10

        4. Defendants falsely certify that their 8(a) entities pursue contracts that will help them grow, develop, and eventually graduate from the program...............................11

        5. Defendants listed "placeholder" General Managers for their 8(a) entities in their submissions to the government, when in fact those managers work for other divisions and have no knowledge of the 8(a) businesses they "manage."................................12

    C.      The Amended Complaint far exceeds the particularity requirements of Fed. R. Civ. P. 9(b)…………………………………………………………………………………13

        1.The Amended Complaint states the who, what, when, where, and why of the fraud. ..............................................................................................................................14

            a. The Amended Complaint fully describes the "who" of the fraud. ...................15

            b. The Amended Complaint fully describes the "what" of the fraud. ..................15

            c. The Amended Complaint fully describes the "when" of the fraud...................17

            d. The Amended Complaint fully explains the "where" of the fraud...................17

            e. The Amended Complaint fully describes the "how" of the fraud. ...................17

2. Defendants' specific criticisms of the particularity of Relator's Amended Complaint are without merit.....................................................................................18

   a. Relator specifically explains how Defendants were involved in the fraud........19

   b. Relator specifically explains how Defendants' subsidiaries were involved in the fraud.............................................................................................................19

   c. Relator's allegations are consistent with the documents attached to the Complaint. ......................................................................................................20

   d. Defendants' Arguments Misread and Misapply *Clausen*.................................20

3. The Amended Complaint Pleads Conspiracy with Particularity............................26

IV. Should Court find any of the Complaint deficient, Relator should be allowed to amend to correct the deficiency………………………………………………………………27

V. Conclusion………………………………………………………………………...28

## I.    INTRODUCTION

Relator Ben Ferris brings this qui tam action on behalf of the United States of America against Defendants Afognak Native Corporation and Alutiiq, LLC. Defendants have violated the False Claims Act by taking advantage of the Small Business Administration's 8(a) Small Business Development Program to gain lucrative government contracts to which they are not entitled.

Defendants argue that certifying false statements to the government regarding their very eligibility to participate in a government program, creating sham companies, and intentionally breaking the laws governing the Small Business Development Program constitute mere "regulatory violations" that do not give rise a claim under the False Claims Act.  Defendants also submit that Relator has failed to plead his claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Because the Amended Complaint explains in great detail the Defendants' scheme of using sham 8(a) entities to fraudulently obtain government contracts for which they do not meet the eligibility requirements, both of Defendants' arguments fail.

Defendants also submit that Relator should be denied leave to amend his complaint.  However, under Federal Rules of Civil Procedure Rule 15(a)(2), leave to amend should be freely given when justice so requires and Defendants provide

no valid reason why leave to amend should not be given or why such leave would prejudice Defendants in any way.  Therefore, should the Court find any portion of Relator's Amended Complaint insufficient, Relator respectfully requests that he be granted leave to amend.

## II.    STANDARD OF LAW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   ARGUMENT

Defendants' memorandum in support of their motion to dismiss can be distilled into three arguments.  First, Defendants argue that the conduct alleged in the Amended Complaint does not constitute a violation of the False Claims Act.  Second, Defendants argue that the individual allegations of fraud in the Amended Complaint are not plausible.   Finally, Defendants argue that the Amended Complaint lacks the requisite particularity under Federal Rules of Civil Procedure Rule 9(b).

As demonstrated herein, because the Amended Complaint contains a detailed description and explanation of the Defendants' fraudulent scheme of using sham 8(a) corporations to obtain favorable government contracts under the Small Business Administration's 8(a) Small Business Development Program, all of these arguments fail.

**A.    Defendants' use of a fraudulent operational structure to exploit the 8(a) system violates the False Claims Act.**

Defendants misconstrue the notion of a "false claim" to argue that Relator does not state a facially plausible claim.  Defendants suggest that their flouting and exploitation of the laws regulating the Small Business Development Program does not violate the False Claims Act.  Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, pp. 9-10.  Defendants suggest that because their sham 8(a) entities exist on paper, they comply with the regulations, regardless of whether those entities exist in fact or perform any actual work, and further argue that Relators do not allege a size requirement violation or management violation. *Id.* at 15. In fact, the Defendants' narrow reading of a "false claim" is incorrect, its fraudulent conduct constitutes far more than a "regulatory violation," and the Amended Complaint pleads these allegations in detail.

As an initial matter, the regulations governing 8(a) small businesses specifically state that misrepresentation of a participating small business' 8(a) eligibility gives rise to penalties under the False Claims Act.  13 C.F.R. §

121.108(e)(2)[1]. Thus, the regulations that Defendants have violated contemplate the False Claims Act as a remedy. *Id.* For this reason alone, Defendants' Motion to Dismiss should be denied.

And, contrary to Defendants' argument, the Amended Complaint does allege how Defendants' operational structure violates specific 8(a) regulations. Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, p. 14. First, 13 C.F.R. §124.109 recites the special rules governing the participation of Alaska Native Corporations (ANCs) in the 8(a) program. This section does not exempt ANCs from the other requirements of 8(a) small businesses to the extent those requirements do not conflict with 13 C.F.R. §124.109. 13 C.F.R. §124.109(a). Under this section, an 8(a) business must be a separate and distinct organized entity. The 8(a) business must meet the size requirement applicable for its industry, but affiliation with "any other business enterprise" will not be considered in determining size *unless* the small business has obtained or is likely to obtain "a substantial unfair competitive advantage within an

---

[1] 13 C.F.R. § 121.108 was updated to list the False Claims Act as a specific remedy on June 28, 2013. Prior to that date, 13 C.F.R. § 121.108 stated that *in addition to other laws which may be applicable*, 15 U.S.C. § 645(d) provides severe criminal penalties for knowingly misrepresenting the small business size status of a concern in connection with procurement programs." 13 C.F.R. § 121.108 (emphasis added). It is clear, however, that the False Claims Act was a remedy for misrepresentations regarding eligibility to participate in the Small Business Development program prior to its specific listing in the regulations. *See U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.*, 530 F. Supp. 2d 888, 899 (Jan. 3, 2008) (upholding an award and calculating damages under the False Claims Act for a business' fraudulent certification as to its small business status.).

industry category." 13 C.F.R. §124.109(c)(2)(iii)(emphasis added).  An ANC 8(a) business must be managed by "one or more individuals who possess sufficient management experience . . . needed to run the concern," and "members of the management team, business committee members, officers, and directors are precluded from engaging in any outside employment or other business interests which conflict with the management of the concern or prevent the concern from achieving the objectives set forth in its business development plan." 13 C.F.R. §124.109(c)(4)(i), (ii).  The ANC-specific requirements also state that the entity must certify "that it is a small business pursuant to the provisions of part 121 of this title for the purpose of performing each individual contract which it is awarded." 13 C.F.R. §124.109(c)(2)(ii).  Section 121 provides that the False Claims Act is a penalty for misrepresentation as to small business size status.  13 C.F.R. §121.108(e)(2).

What Defendants certified to the government contradicts what exists in fact. Defendants certified to the government that their 8(a) businesses meet the regulatory requirements, i.e., that they are separate and distinct entities, with the requisite number of employees and properly skilled managers in place. *See* 13 C.F.R. §124.109(a), (c)(2)(iii), (c)(4)).  In fact, the entities exist only on paper, have no real employees except those of their parent company, and have only placeholder managers who have no knowledge of which small businesses they

"manage," and instead work solely to advance the interests of the Defendant parent companies.   *See* Am. Compl., p. 12-13, 15-26.   As such, and as pled in the Amended Complaint, Defendants' conduct violates the 8(a) regulations because they are not in fact separate and distinct entities, nor do they meet the size standards or management requirements because they are — in effect — a single company.[2]  *See id*.   Specifically, for example, the Amended Complaint explains that Defendants are required to submit an Annual Review Document for each of their 8(a) entities to ensure each entity's continued eligibility in the program and certify that all information included in the update is "true, correct, and accurate." *Id.* at 12-13.   The Defendants argue that they are absolved of wrongdoing merely because these papers they presented to the government certified that they are in compliance with the 8(a) regulations.   Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, p. 15.   But this is precisely the point; Defendants' certifications were false. *See, e.g.*, Am. Compl., Ex. 6.

Defendants also misapply *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007) to this case.    In *Griffin,* the court said that while it was required

---

[2] This detailed pleading is not "conclusory" as Defendants suggest. Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, pp. 11-12.   For example, Relator does not merely allege that the 8(a) business were "shams," he also alleges in detail how and why they were shams.   Am. Compl., pp. 15-26.   These are not conclusions; they are the well-pleaded facts which go far beyond the "formulaic recitation of the elements of a cause of action."   *Twombly*, 550 U.S. at 555. (a complaint need not contain "detailed factual allegations") (internal quotations omitted).

to accept as true all facts as alleged in the complaint, it did "not require us to ignore specific factual details of the pleading [contained in attached exhibits] in favor of general or conclusory allegations." *Id.* at 1205-1206.  In *Griffin*, however, the allegations in the complaint were rendered impossible to prove by the facts contained in attached exhibits.   Specifically, the plaintiff in *Griffin*, a chicken plant, argued that it was singled out by the regulator defendants, and unfairly treated in comparison with another similarly situated plant. *Id.* at 1200.  Plaintiffs' complaint made conclusory statements that it was similarly situated to the other plant (a step necessary to establish its equal protection claim), but then attached exhibits that demonstrated that it and the other plant were in fact wholly dissimilar. *Id.* at 1206.

This is not the case here. Relator's Amended Complaint alleges in detail the fraud pervading Defendants' participation in the 8(a) Business Development Program.   The exhibits attached to the Amended Complaint demonstrate the illusory paper trail Defendants laid in their scheme to defraud the government, and the Complaint explains use of that paper trail in the creation and maintenance of the fraud.   *See* Am. Compl., pp. 17-26; *see also, e.g.,* Am. Compl. Ex. 2(a) (demonstrating that Defendants' internal reports of operations and profits were calculated based on work done by their eight business divisions, with no regard to

any 8(a) entities).[3]   Unlike *Griffin*, the "facts" contained in the exhibits do not render Relators' well-pled causes of action impossible; rather, they support and illustrate the fraud alleged in detail in the Complaint.   In this case, Defendants in essence ask this Court to choose the facts alleged in the Complaint it should consider, and interpret those facts in a light most favorable to *Defendants*.   *See* Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, p. 12 (asking the Court look to the Complaint's exhibits out of context and ignore the explanation of those exhibits contained in the Complaint).   This is not the standard.   *See Twombly*, 550 U.S. at 555; *Griffin*, 496 F.3d at 1205-06. Defendants cannot ask the Court to ignore the pleading of the Complaint and look solely to the exhibits out of context. Accordingly, Relator's Amended Complaint is properly pled and Defendants' motion should be denied.

**B.**   **Each of Relator's specific claims as to Defendants' misrepresentations to the government regarding their contract performance is plausible.**

Defendants next posit that none of their misrepresentations to the government as to the performance of their government contracts is facially plausible.   These claims are not only plausible, but they are also pled with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure as discussed more fully below (*see* section III, (C), *infra).*

---

[3] Because the Amended Complaint was filed under seal, it does not have a document number in the Court's file on PACER.

**1.    Defendants' businesses did not comply with the 8(a) program requirements, and their certifications as to their compliance were fraudulent.**

As discussed in detail above in § III(A), Defendants exploited the 8(a) Small Business Development Program and violated its accompanying regulations to gain lucrative government contracts to which they were not otherwise entitled. Moreover, Defendants falsely certified to the government that their 8(a) businesses met industry size standards and were accordingly qualified to participate in the program.  In fact, the various 8(a) entities were all merely sham placeholders on the required paperwork, and Defendants' eight business divisions performed all actual work on Defendants' government contracts.  Am. Compl., pp. 15-26.  Such false certifications give rise to a False Claims Act claim.    13  C.F.R. §121.108(e)(2).

**2.    Defendants' 8(a) entities are separate legal entities on paper only.**

Defendants argue Relator's claim is not plausible because he acknowledges in his Amended Complaint that each of Defendant's 8(a) subsidiaries are "legal entities."   This is precisely the point – Defendants have created a sham system through which they capture government business to which they are not entitled.  It is not enough to create a "legal" entity; under the 8(a) regulations this entity must also be separate and distinct.  Relators' Amended Complaint explains that these entities exist only on paper; they are, in fact, a single operative entity that

Defendants created and controlled to exploit the 8(a) program.  *See* Am. Compl., pp. 15-26.

> **3.    The Amended Complaint alleges that Defendants' 8(a) entities failed to meet the percentage of work requirements under their government contracts.**

Defendants submit that "Relator's allegation relies entirely on his claim that Defendants' subsidiaries could not have performed the percentage of work required by any contract 'because Defendants' 8(a) companies have no employees at all.'"  Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, pp. 16-17.  This is correct, and moreover, it is sufficient to state a plausible claim.  Defendants point to the exhibits attached to the Amended Complaint as evidence of the 8(a) business' "employees."  As discussed above in § III(A)(1), however, Defendants may not cherrypick which facts contained in the Complaint it would like the Court to consider. The facts alleged in the Amended Complaint state that Defendants do not meet the percentage of work requirements.  The attached exhibits demonstrate the fraudulent paperwork submitted by Defendants, including fraudulent certifications regarding its 8(a) businesses' various percentage of work requirements.  In fact, these 8(a) entities have no actual or leased employees to do any of the work, because they only exist on paper.  Am. Compl., p. 24.

**4.    Defendants falsely certify that their 8(a) entities pursue contracts that will help them grow, develop, and eventually graduate from the program.**

As explained in the Amended Complaint, the government's objective is that 8(a) entities will grow, develop, and eventually graduate from the 8(a) program. Am. Compl., pp 17-18.  To that end, as further explained in the Complaint, the 8(a) program requires participants to certify that they will pursue contracts that allow the 8(a) to grow, develop, and eventually graduate from the program. *Id*.  As the Complaint clearly alleges, Defendants represent and falsely certify to the government that their aim is for each 8(a) program to grow, develop, and graduate from the program, even though the Defendants know that the procured contracts will inure only to the benefit of the Defendants and not the sham 8(a) entities which are supposed to be developing and growing.  Am. Compl., pp. 17-18, 32, 34, 36, 39, 40.  In response to this allegation, Defendants point to their first 8(a) entity's alleged growth and graduation from the program as evidence of their compliance with the growth, development, and graduation requirements as to all their other 8(a) entities.  Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, p. 18.  The inaccuracy of this assertion notwithstanding, at this juncture, all that is before this Court are the well-pleaded facts of Relator's Amended Complaint, and not Defendants' interpretations of and explanations for those facts.   And as the Amended Complaint explains, it was upon this first entity's graduation from the

program that Defendants began to exploit the 8(a) program by creating sham 8(a) entities.  *See* Am. Compl., pp. 1, 16-17.  Neither the inferences the Defendants would like the Court to draw from the facts alleged in the Complaint, nor Defendants' contesting of the accuracy of these allegations is relevant at this juncture.

> **5.     Defendants listed "placeholder" General Managers for its 8(a) entities in its submissions to the government, when in fact those managers work for other divisions and have no knowledge of the 8(a) businesses they "manage."**

Defendants summarily state that the Amended Complaint does not allege that the General Managers of its 8(a) entities did not devote the time required under 8(a) regulations to manage and grow the 8(a) companies.   An ANC 8(a) business requires a general manager who possesses "sufficient management experience . . . needed to run the concern," and "members of the management team, business committee members, officers, and directors are precluded from engaging in any outside employment or other business interests which conflict with the management of the concern or prevent the concern from achieving the objectives set forth in its business development plan." 13 C.F.R. §124.109(c)(4)(i), (ii).

The Amended Complaint describes in detail the sham nature of the GMs' involvement in the entities they are purported to oversee.  Defendants certify to the government that each of their 8(a) businesses have general managers in place,

when in fact those general managers work for other divisions of Defendants, do not know which 8(a) businesses they oversee, have never been to those business' "headquarters," and even no longer work for Defendants. Am. Compl., p. 20; *see also* Am. Compl. Ex. 5 (internal message dated March 5, 2013 in which Bernie Conrow admits that he has "never done anything except sign a few papers" as "general manager" of 8(a) entity Alutiiq-Mele, and that he knows "that is not the correct answer.").

### C. The Amended Complaint far exceeds the particularity requirements of Fed. R. Civ. P. 9(b).

From their motion to dismiss, Defendants appear to expect Relator to try his entire case within the four corners of the Amended Complaint. Contrary to the Defendants' suggestions, Rule 9(b) of the Federal Rules of Civil Procedure does not create such a standard. "The purpose of Rule 9(b), as interpreted by *Clausen,* is to ensure (1) that an opportunistic relator is unable to tarnish the reputation of [a government contractor] by instituting a spurious lawsuit and (2) that a minor deviation from a standard of care does not expand into a quasi-criminal proceeding in federal court." *United States ex rel. King v. DSE, Inc.,* No. 8:08-CV-2416-T-23EAJ, 2011 WL 1884012, at *1 (M.D. Fla. May 17, 2011)(internal citations omitted).

The Amended Complaint meets these pleading requirements by clearly stating simple, concise, and direct allegations of the circumstances constituting the

13

fraud (and thus also the submission of false claims), which make relief plausible, not merely conceivable, when taken as true. *See generally United States ex rel. Grubbs. v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009). In other words, Defendants' deviation from the standard of care is substantial, and this lawsuit is anything but spurious.

> **1.   The Amended Complaint states the who, what, when, where, and why of the fraud.**

In the Amended Complaint, Relator gives a detailed account of Defendants' fraudulent scheme of making wholesale misrepresentations of Defendants' eligibility to bid on and procure government contracts through the SBA's 8(a) Small Business Development Program, thereby fraudulently obtaining favorable government contracts and funds which are designated for historically disadvantaged (and eligible) 8(a) businesses. These allegations satisfy the requirements of Rule 9(b) because it sets out "the who, what, when, where, and how of the fraud alleged." *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1276 (N.D. Ga. 2012).[4]

---

[4] Further, it should be recognized that Defendants—as evidenced by their 32-page motion to dismiss, much of which disputes the factual basis for Relator's allegations — are well aware of the nature of the allegations against it in this case, and notice is ultimately the purpose of any complaint. *See* Fed. R. Civ. P. 8.

### a.   The Amended Complaint fully describes the "who" of the fraud.

The Complaint fully explains the corporate structure of Afognak, identifies Afognak's eight divisions and fourteen 8(a) small business subsidiaries, fully explains Afognak's corporate relationship with Alutiiq, describes the services which Alutiiq (through Afognak) provides to the government, and details Afognak NC's role in fraudulently procuring the government contacts and then submitting the fraudulent claims for payment to the government.  Am. Compl., pp. 2, 4-5, 15-18.

### b.   The Amended Complaint fully describes the "what" of the fraud.

The Complaint contains a comprehensive explanation of the Defendants' fraudulent scheme to procure government contracts and submit fraudulent claims for payment.   As the Complaint details, the certifications and representations that Afognak and Alutiiq submit to the government regarding the entities that will perform the contracted work are all false. Afognak NC's sham 8(a) entities exist only on paper, and in no way perform these contracts. In actuality it is the business divisions within Alutiiq's corporate structure that bid on and perform the government contracts on a nationwide basis. While the 8(a) companies' bids name the General Managers who will be responsible for performing the contract if awarded, these managers are not aware that the division is submitting a bid to the

government in the names of their 8(a) companies. It is the Senior Vice Presidents of these divisions who submit the bids and decide which sham 8(a) will be included in the paperwork submitted to the government so as to qualify for these government contracts. The Senior Vice Presidents and their employees oversee and manage the division's contracts, and division employees perform the contracts nationwide. The 8(a) entities exist merely as conduits to obtaining government contracts that would otherwise only be available to qualified 8(a) small business entities. Thus, while corporate niceties are observed in communications with the government, within Afognak NC and Alutiiq there is no pretense concerning the fictional nature of the 8(a) entities. In the meantime, while Afognak NC and Alutiiq balloon in size, the government continues to pay these fictional 8(a) companies as though they were actual Alaska Native small businesses capable of performance instead of mere placeholders on accounting ledgers. Am. Compl., p. 3 Further, the Amended Complaint even explains in great detail the specific facts about the sham entities that Defendants misrepresent. Am. Compl., pp. 20-26.

### c.   The Amended Complaint fully describes the "when" of the fraud.

As the Complaint explains, the fraudulent scheme is ongoing and continues to this day.  Further, the Complaint specifically details when the Relator became concerned that Defendants' scheme of misrepresenting and falsely certifying that 8(a) business entities were bidding on and performing the awarded government contracts was in violation of the law and when Relator notified Afognak's Chief Executive Officer Richard Hobbs of his concerns.  Am. Compl., pp. 14-15.

### d.   The Amended Complaint fully explains the "where" of the fraud.

The Complaint explains that the fraud was a top-down and company-wide scheme to misrepresent the eligibility of all of Afognak's sham 8(a) entities to bid on 8(a) projects, and that the fraud arose directly from decisions made at the corporate management level.   The Complaint specifically states where the Defendants are headquartered, and thus also the location from which the frauds emanated. Am. Compl., pp. 1-5, 15-23.

### e.   The Amended Complaint fully describes the "how" of the fraud.

The Amended Complaint completely details the way in which Defendants perpetrate the fraud, including the mechanisms in place to hide the true nature of the sham entities (Am. Compl., pp. 17-18), the way in which contracts are divided amongst the sham entities (Am. Compl., p. 19), the and benefit to the Defendants

of fraudulently obtaining these contracts, and how the frauds give rise to government contracts and thus fraudulent claims.

In short, Relator's Complaint meets the Rule 9(b) pleading standard; the Complaint certainly provides more than enough information to put Defendants on notice of the allegations against them. In this case, that means that Relator has actually far exceeded the standards for specificity and detail required by Eleventh Circuit law and the Federal Rules of Civil Procedure. Eleventh Circuit law is clear that "Rule 9(b)'s heightened pleading standard may be applied less stringently . . . when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." *Hill v. Morehouse Med. Assocs., Inc*., No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003). Such is the case here.

At this stage of litigation, all of these well-pleaded facts must be accepted as true, and taken together they more than meet the standard of stating a plausible claim for relief. Relator has fully complied with Rule 9(b) and afforded Defendants ample notice of the nature of the allegations against them.

### 2. Defendants' Specific Criticisms of the Particularity of Relator's Complaint are Without Merit.

In addition to the general, shotgun attack on the sufficiency of the Amended Complaint, Defendants raise specific arguments regarding the sufficiency of the fraud and conspiracy claims in the Complaint. These arguments also fail.

### a.   Relator specifically explains how Defendants were involved in the fraud.

Defendants argue that Relator's Complaint should be dismissed because it fails "to identify how *Defendants* were involved in the violation of the FCA." Am. Br. in Supp. of Mot. to Dismiss, Doc. 39, p. 24. This argument is a little difficult to follow, but it appears that Defendants are attempting to hide their transgressions behind their sham 8(a) entities. In other words, Defendants apparently argue that the Amended Complaint includes allegations against Defendants' sham entities, but not the Defendants themselves. This argument is flatly refuted by the plain language allegations of the Complaint, which plead that Defendants are architects and participants of the fraud. Am. Compl., p. 15-26. Indeed, the Complaint's allegation that the sham entities are in actuality the Defendants, and vice versa, is the very essence of the fraud.

### b.   Relator specifically explains how Defendants' subsidiaries were involved in the fraud.

Defendants' argument that Relator's Amended Complaint fails to identify "which subsidiaries were not qualified for the program" and "what contracts were a part of the alleged scheme" is equally as flawed. This argument misconstrues the clear allegations of the Complaint. Relator does not argue that the 8(a) programs as they were represented to the government were not qualified for the program. Rather, Relator's Complaint alleges (and Relator is prepared to prove)

that the Defendants created a scheme whereby all of its 8(a) entities appear to the government to be legitimate, when in actuality, all 8(a) entities are actually shams; that is, they do not actually exist as represented to the government. Relator's Complaint specifically shows that all of the 8(a) entities were merely empty vehicles that Afognak used to capture government contracts for which it was not qualified.  Am. Compl. pp. 15-26. As such, every 8(a) contract procured by these sham entities is a part of the scheme.

### c.   Relator's allegations are consistent with the documents attached to the Complaint.

As demonstrated *supra* at § III(A), this argument is improper at this time. This argument asks the Court to dismiss the Amended Complaint based on Defendants' selective reading of its own fraudulent documents, extracting only those assertions from the documents which, when taken out of context, can be misread to support Defendants' position.   In truth, the documents, taken as a whole, demonstrate the pervasiveness of the fraud and the accuracy of the allegations of the Complaint.

### d.   Defendants' Arguments Misread and Misapply *Clausen*.

Citing the Eleventh Circuit's *Clausen* opinion, Defendants argue that Relator's Amended Complaint fails for failing to "identify a single false claim or invoice presented to the government . . . ."  *See United States ex rel. Clausen v.*

*Lab. Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002).   This argument misreads *Clausen* and the requirements in the Eleventh Circuit for pleading the submission of false claims.

The Eleventh Circuit's subsequent cases make clear "that a somewhat more flexible, case-by-case approach to *Clausen's* principles may be properly applied where the relator's complaint provides other 'indicia of reliability' that support the relator's belief and allegations that the defendant submitted actual fraudulent claims to the government." *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.,* 906 F. Supp. 2d 1264, 1276-77 (N.D. Ga. 2012); *see also Cade v. Progressive Cmty. Healthcare, Inc.*, No. 1:09–CV–3522–WSD, 2011 WL 2837648, at *3–7 (N.D. Ga. July 14, 2011) (collecting and synthesizing Eleventh Circuit *qui tam* pleading cases); *United States ex rel. Walker v. R & F Props. of Lake County, Inc.,* 433 F.3d 1349, 1359–60 (11th Cir. 2005) (in which the Eleventh Circuit found that the relator's complaint properly survived dismissal where the relator's allegations were based on her personal employment experience within defendant's medical practice and her conversations with the office administrator); *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1230 (11th Cir. 2012) ("[W]e are more tolerant toward complaints that leave out some particularities of the submissions of a false claim if the complaint also alleges personal knowledge or participation in the fraudulent conduct.")

21

In *United States ex rel. King v. DSE, Inc.*, No. 8:08–CV–2416–T–23EAJ, 2011 WL 1884012 (M.D. Fla. May 17, 2011), the relator alleged that the defendant violated the False Claims Act by certifying the grenades manufactured for the military met the government's specifications. *Id.* at *1. The defendant moved to dismiss, arguing the complaint failed to meet the *Clausen* pleading standard. The court disagreed, finding that where relator's knowledge of the falsity of the defendant's certification that defendant's manufactured items complied with contract specifications was based upon his own knowledge and involvement in the manufacturing process, the complaint allegations afforded the requisite reliability to support the relator's False Claims Act claims. *Id.* at *1-3. The court specifically noted the flaw in applying the defendant's proposed reading of *Clausen*:

> *Clausen* holds that a relator asserting a claim for health care fraud must allege with specificity a claim or bill submitted to the government. In other words, a relator who is aware of an improper, inferior, or bogus medical product or service cannot sustain a False Claims Act action without alleging a particular bill sent to, and paid by, the government…. In other words, in the medical context the harm to the government arises from the act of billing. If a patient received improper treatment but the government was not billed, the government suffers no actionable consequence (under the FCA). The government may have an interest in enforcing FDA regulations or ensuring that a doctor provides proper medical care, but sloppy recordkeeping or substandard treatment harms no pecuniary interest of the government absent a billing. By contrast, improper quality control procedures in assembling military equipment distinctly harm the government entirely distinct from any financial impact.

*Id*. at \*1-2. Here, just as in *King*, Relator pleads in great detail the scheme by which Defendants falsely certify compliance with government requirements in conjunction with the submission of claims to the government. Further, courts have consistently held that the government is damaged, and that a violation of the False Claims Act occurs, where a company falsely certifies its eligibility to participate in a government program.  *See, e.g. United States ex rel. Longhi v. United States* 575 F.3d 458, 473 (5th Cir. 2009) ("The Government's benefit of the bargain was to award money to eligible deserving small businesses"); *see also Williams v. C Martin Co. Inc*., No. CIV.A. 07-6592, 2014 WL 1652438, at \*4 (E.D. La. Apr. 24, 2014) (in which the court held that a where a misrepresentation is material to the government's decision to award a contract, the misrepresentation gives rise to a False Claims Act claim.)

Courts in other circuits have consistently reached the same conclusion.  For example, in *United States ex rel. Sansbury v. LB & B Associates, Inc.*, No. CV 07-251 (EGS), 2014 WL 3509789, (D.D.C. July 16, 2014), much like in the present case, the government and relator alleged that the defendant had fraudulently misrepresented its eligibility to participate in the 8(a) program.  *Id.* at \*4.  Just like this case, the defendants moved for dismissal under Rule 9(b), arguing that the complaint failed "to sufficiently identify what was given up as a consequence of the fraud" and did not "identify a single specific false claim or invoice for payment

or the date(s) or cost(s) of any such claim." *Id.* at * 14.  The court rejected this

argument, and noted that the narrow reading of Rule 9(b) proposed by the

defendants -- and also argued by the Defendants in the case before this Court --

would "eviscerate" the standard intended by Rules 8 and 9(b):

> Most importantly, Rule 9(b)'s particularity requirement must be read
> in concert with Rule 8, which requires only that a complaint contain a
> "short and plain statement" of the claim. Defendants' narrow reading
> of Rule 9(b) would essentially eviscerate this standard and require
> claimants to provide detailed proof of their allegations at this early
> stage in the litigation. That is simply not what is required on a motion
> to dismiss pursuant to Rule 9(b). Rather, at this stage in the litigation,
> an FCA "plaintiff need not allege with specificity every element of its
> cause of action if the complaint contains allegations from which an
> inference may be drawn that the plaintiff will produce evidence on the
> essential elements." Indeed, the language of Rule 9(b) makes clear
> that particularity must be pled only with respect to the circumstances
> constituting fraud. This is especially true where, as here, the
> Government's FCA claims are based on a fraudulent "scheme," in
> which the circumstances make it likely that the alleged fraud was
> "consummated through the presentment of false claims.

*United States ex rel. Sansbury v. LB & B Associates, Inc.*, No. CV 07-251 (EGS),

2014 WL 3509789, at *13 (D.D.C. July 16, 2014)(internal citations and quotations

omitted).

Using this strained reading of *Clausen*, Defendants argue that because the

Complaint does not allege that Relator ever observed Defendants' submission of

claims for payment pursuant to the fraudulently procured 8(a) contracts, Relator's

claims fail unless Relator's claims contain other indicia of reliability. Am. Br. in

Supp. of Mot. to Dismiss, Doc. 39, p. 29. Notwithstanding the legal error in this

argument noted above, even under Defendants' line of thinking, Relator's Amended Complaint is *still* nonetheless sufficient because it contains extensive indicia of reliability of the very type that the Eleventh Circuit has found persuasive in the past.

For example, just like the relator *Walker*, in this case, Relator's allegations are based on his personal employment experience and his direct conversations with the people responsible for making the decisions regarding the submission of the fraudulent claims.  See *Walker*, 433 F.3d at 1359-60.

Defendants refer the Court to two cases that according to Defendants contain similar allegations to this case: *United States ex rel. Wilson v. Crestwood Healthcare, L.P.,* No. CV-11-S-3361-NE, 2012 WL 1886531 (N.D. Ala. May 18, 2012) and *Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006).  However, a cursory review of those cases reveals that they bear almost no similarity to the present matter.

In neither case was the relator a corporate insider or even an employee of the defendant company. In *Wilson*, for example, relator was simply a development company from whom the defendant company leased property.   *Id*. at *2.  The relator's False Claims Act violations, which the court ultimately found to be wanting, arose from a sublease agreement the defendant and various physicians with whom the relator had no connection.  *Id*.   Indeed, in distinguishing the

25

allegations in the *Wilson* complaint from the Eleventh Circuit's *Walker* and *Matheny* decisions, the court reasoned:

> The differences between the specificity of the allegations in *Walker* and *Matheny*, on the one hand, and the case at bar, on the other, are striking. Perhaps most salient is the fact that, here, relator is a corporate outsider, while in those cases the relators were former employees of the defendants. There is no requirement that a relator be an employee or former employee, and the Eleventh Circuit has recognized the difficulty an outsider faces in satisfying Rule 9(b). *See Clausen*, 290 F.3d at 1314 ("We are not unsympathetic to the situation in which Clausen finds himself. Most relators in qui tam actions are insiders. As a corporate outsider, he may have had to work hard to learn the details of the alleged schemes...."). Nonetheless, a relator, be he an insider or an outsider, still must be able to state the "who," "what," "where," "when," and "how" of claims filed with the government. *Corsello*, 428 F.3d at 1014. See also *Clausen*, 290 F.3d at 1314 (stating that the pleading standard is not relaxed for corporate outsiders). Of more legal significance than their status as insiders, the relators in *Walker* and *Matheny* alleged specific details about the filing of fraudulent claims. Relator's bare assertion that claims were filed, and that the Crestwood CFO told him that there were fraudulent claims, does not meet that standard.

*Wilson*, 2012 WL 1886351 at *10.   Here, like *Walker*, and unlike *Wilson* and *McInteer*, Relator is a corporate insider who has with great specificity plead the "who, what, when, where and why" of the Defendants' false claims.   As such, Relator's Complaint contains substantial indicia of reliability.

> **3.   The Amended Complaint pleads conspiracy with the requisite particularity.**

A person who "conspires to defraud the government by getting a false or fraudulent claim allowed or paid" is subject to FCA liability. 31 U.S.C. §

3729(a)(3). To sustain a conspiracy cause of action under the FCA, Relator must be able to show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the United States and (2) at least one act performed in furtherance of that agreement. *See United States ex rel. Graves v. ITT Educ. Servs., Inc.,* 284 F. Supp. 2d 487, 509 (S.D. Tex. 2003). Here, Relator has pleaded and fully explained the conspiracy between Afognak and Alutiiq to defraud the government regarding the sham 8(a) entities.   Amended Compl. at pp. 28-29.

**IV.    Should Court find any of the Complaint deficient, Relator should be allowed to amend to correct the deficiency.**

As   demonstrated   above,   Relator's   Amended   Complaint   exceeds   the requirements for pleading False Claims Act claims under Eleventh Circuit law and the Federal Rules of Civil Procedure.   However, should the Court determine that the pleading requirements are not met, Relator would request leave to file a Second Amended Complaint further detailing the information in his possession.   Under Federal Rules of Civil Procedure Rule 15(a)(2), leave to amend should be freely given when justice so requires. Defendants provide no valid reason why leave to amend should not be given to Relator, nor have Defendants demonstrated how granting Relator such leave would prejudice Defendants in any way.

## V.    CONCLUSION

Because Relator has stated a colorable False Claims Act case with the specificity required by the Rules of Civil Procedure, Defendants' Motion to Dismiss should be denied.

Dated: December 1, 2014

                     s/ Oscar M. Price IV
                     Oscar M. Price IV (ASB-6501-O71P)
                     Nicholas W. Armstrong (ASB-7277-I47A)

**OF COUNSEL:**

**Price Armstrong, LLC**
2421 2nd Ave. N., Ste. 1
Birmingham, AL 35203
Phone: 205.208.9588
Facsimile: 205.208.9598
Oscar@pricearmstrong.com
Nick@pricarmstrong.com

Joel M. Androphy
Sarah M. Frazier
**Berg & Androphy**
3704 Travis Street
Houston, TX 77002
Phone: 713.529.5622
Facsimile: 713.529.3785
sfrazier@bafirm.com
jandrophy@bafirm.com

Henry I. Frohsin
James F. Barger
J. Elliott Walthall
Carrie M. Moates
**Frohsin & Barger LLC**
2421 2nd Ave. N., Ste. 1
Birmingham, AL 35203
Phone: 205.933.4006
Facsimile: 205.933.4008
henry@frohsinbarger.com
jim@frohsinbarger.com
elliott@frohsinbarger.com
carrie@frohsinbarger.com

*Attorneys for Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2014, I filed the foregoing using the

CM/ECF document filing system which serve a copy on all counsel of record.


s/ Oscar M. Price IV
Oscar M. Price IV (ASB-6501-O71P)